******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

TEANNA ESCOURSE ET AL. *v.* 100 TAYLOR
AVENUE, LLC, ET AL.
(AC 35054)

DiPentima, C. J., and Gruendel and Beach, Js.

*Argued January 9—officially released June 10, 2014*

(Appeal from Superior Court, judicial district of
Fairfield, S. Richards, J. [motion to strike]; Sommer, J.
[motion for judgment, judgment].)

*Paul L. Brozdowski*, for the appellants (plaintiffs).

*M. Jeffry Spahr*, deputy corporation counsel, and
*Scott R. Ouellette*, for the appellee (defendant city of
Norwalk).

*Opinion*

BEACH, J. The plaintiffs, Teanna Escourse, through her parents and next friends, and her parents, Gillian Escourse and Christopher Fearon, individually, appeal from the judgment of the trial court rendered in favor of the defendant city of Norwalk (city).[1] The plaintiffs claim that the court improperly granted the city's motion to strike their public nuisance claim. We affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant to our resolution of the plaintiffs' claims. The plaintiffs commenced the present action on June 22, 2011. This action arises from an incident that allegedly took place at approximately 12:30 a.m. on January 1, 2011, when Teanna Escourse, then sixteen years old, was struck by a hit and run driver while she was walking along the shoulder of Taylor Avenue in the southbound lane of travel in front of 100 Taylor Avenue in Norwalk.

The operative complaint is the plaintiffs' fourth amended complaint. It alleged that on January 1, 2011, Teanna Escourse "was forced to enter the southbound lane of traffic because the sidewalk area and the shoulder of the roadway were obstructed with snow due to a severe storm that ended more than four days before on December 27, 2010, and the actions and omission of the [city] . . . ." The fourth count, the subject of this appeal, asserted a claim of public nuisance against the city.[2]

As against the city, the plaintiffs alleged the following: "The incident and resulting injuries alleged herein were due to the intentional acts of the [city] . . . its agents, servants and employees, in creating a public nuisance pursuant to [General Statutes §] 52-557n (a) (1), in one or more of the following ways:

(a) In that the [city] plowed the snow that had accumulated on Taylor Avenue onto the sidewalk abutting 100 Taylor Avenue, thereby rendering the sidewalk impassible to pedestrians;

(b) In that the [city] removed and/or plowed the snow that had accumulated on Taylor Avenue in such a manner as to obstruct, impede and endanger public use of the sidewalk abutting 100 Taylor Avenue;

(c) In that the [city] removed and/or plowed the snow that had accumulated on Taylor Avenue in such a manner as to render the sidewalk abutting 100 Taylor Avenue impassible to pedestrians;

(d) In that the [city] failed to properly and safely remove and/or plow the snow that had accumulated on Taylor Avenue without obstructing, impeding and/or endangering public use of the sidewalk abutting 100 Taylor Avenue; and

(e) In that the [city] failed to properly and safely remove and/or plow the snow that had accumulated on Taylor Avenue without rendering the sidewalk abutting 100 Taylor Avenue impassible to pedestrians." The complaint also alleged causation, damages, and notice pursuant to General Statues § 7-465.[3]

The city moved to strike the plaintiffs' public nuisance claim,[4] arguing that the plaintiffs' exclusive remedy as to the city was an action pursuant to General Statutes § 13a-149. By way of an order and memorandum of decision dated May 31, 2012, the court, *S. Richards, J.*, relying on *Himmelstein* v. *Windsor*, 304 Conn. 298, 39 A.2d 1065 (2012), granted the city's motion to strike and subsequently rendered judgment in favor of the city on the stricken claim.[5] This appeal followed.

The plaintiffs contend that the court improperly concluded that their exclusive remedy against the city was an action pursuant to § 13a-149 and improperly granted the city's motion to strike their nuisance claim. The plaintiffs argue that their "nuisance claim is not about the condition of the highway due to the negligence or neglect by the city, but rather, it alleges an intentional affirmative act by the city which contributed to the condition of the sidewalk abutting 100 Taylor Avenue and created a public nuisance." The city maintains that the plaintiffs' exclusive remedy for personal injury related to a sidewalk blocked by snow is a defective highway claim under § 13a-149. The city further contends that § 52-557n (a) (1) (C) bars the plaintiffs' nuisance claim because that section expressly provides that § 13a-149 is the plaintiffs' exclusive remedy for injuries resulting from a defective road or bridge, and Teanna Escourse's injuries are alleged to have been caused by a defective road and/or sidewalk. The city's argument is that the plaintiffs' claim functionally alleges a defective sidewalk, and, therefore, no action may be maintained except pursuant to § 13a-149, subject to its sole proximate cause limitation, regardless of whether the defect was a public nuisance created by an affirmative act of the city.

"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *Alves*, 262 Conn. 480, 498, 815 A.2d 1188 (2003). "In reviewing the sufficiency of the allegations in a complaint, courts are to assume the truth of the facts pleaded therein, and to determine whether those facts establish a valid cause of action. . . . [I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . Thus, we assume the truth of both the specific factual allegations and any facts fairly provable thereunder. . . . Moreover, [w]hether a highway is defective may involve issues of fact, but whether the facts alleged

would, if true, amount to a highway defect according to the statute is a question of law [which may be determined on a motion to strike]. . . . Because a motion to strike challenges the legal sufficiency of a pleading . . . and, consequently, requires no factual findings by the trial court, our review of the court's ruling [on a motion to strike] is plenary."[6] (Internal quotation marks omitted.) *Kumah* v. *Brown*, 307 Conn. 620, 626, 58 A.3d 247 (2013).

In reviewing the plaintiffs' claims, we consider principles of state and municipal immunity and liability as they relate to injuries caused on or near a roadway. "It is well established law that the state is immune from suit unless it consents to be sued by appropriate legislation waiving sovereign immunity in certain prescribed cases . . . . The state legislature . . . possesses the authority to abrogate any governmental immunity by statute that the common law gives to the state and municipalities. . . . Indeed, this is what the legislature did in the area of highway defects when it enacted the state and municipal highway liability statutes. The state, which ordinarily would not be liable, permitted itself, as a matter of grace, to be sued under the express conditions of [§ 13a-144]. Therefore, because the state has permitted itself to be sued in certain circumstances, [our Supreme Court] has recognized the well established principle that statutes in derogation of sovereign immunity should be strictly construed. . . . Accordingly, the only avenue through which a plaintiff, injured by means of a highway defect on a state road, may seek recovery from the state is through an action brought pursuant to § 13a-144." (Citation omitted; internal quotation marks omitted.) *Himmelstein* v. *Windsor*, supra, 304 Conn. 307.

"Furthermore, our legislature has established general principles of municipal liability and immunity, providing that political subdivisions of the state may be sued for creating or participating in the creation of a nuisance. General Statutes § 52-557n (a) (1) (C).[7] The municipal liability statute also specifically provides, however, that '*no cause of action* [*in nuisance*] *shall be maintained* [*against a municipality*] *for damages resulting from injury to any person or property by means of a defective road or bridge except pursuant to section 13a-149.*' . . . General Statutes § 52-557n (a) (1) (C). Therefore, although '[l]iability in nuisance can be imposed on a municipality . . . if the condition constituting the nuisance was created by the positive act of the municipality'; *Wright* v. *Brown*, 167 Conn. 464, 470, 356 A.2d 176 (1975); if the injury complained of was caused by a highway defect on a town road, the plaintiff's only recourse against the town is to pursue a claim under § 13a-149." (Emphasis in original; footnote added.) *Himmelstein* v. *Windsor*, supra, 304 Conn. 308; see also *Kumah* v. *Brown*, supra, 307 Conn. 627. Additionally, because "[t]he highway defect statute, § 13a-

149, is a legislative exception to the immunity that municipalities enjoyed at common law . . . as such, [it] must be strictly construed." *Read* v. *Plymouth*, 110 Conn. App. 657, 663, 955 A.2d 1255, cert. denied, 289 Conn. 955, 961 A.2d 421 (2008).

Section 13a-149 provides in relevant part: "Any person injured in person or property by means of a defective road or bridge may recover damages from the party bound to keep it in repair. . . ."[8] "[A] highway defect is [a]ny object in, upon, or near the traveled path, which would necessarily obstruct or hinder one in the use of the road for the purpose of traveling thereon, or which, from its nature and position, would be likely to produce that result." [9] (Internal quotation marks omitted.) *Himmelstein* v. *Windsor*, supra, 304 Conn. 309. Furthermore, "a highway is defective within the meaning of § 13a-149 when it is not reasonably safe for public travel, and the term public travel refers to the normal or reasonably anticipated uses that the public makes of a highway in the ordinary course of travel." (Internal quotation marks omitted.) *Cuozzo* v. *Orange*, 147 Conn. App. 148, 157, 82 A.3d 647 (2013), cert. granted in part on other grounds, 311 Conn. 914, 84 A.3d 881 (2014).

"The duty of the municipality to use reasonable care for the reasonably prudent traveler . . . extends to pedestrian travel as well as to vehicular traffic . . . ." (Internal quotation marks omitted.) *Bellman* v. *West Hartford*, 96 Conn. App. 387, 394, 900 A.2d 82 (2006); see also *Himmelstein* v. *Windsor*, 116 Conn. App. 28, 37, 974 A.2d 820 (2009) ("to fall within the ambit of §13a-149, a person must simply be on the highway for a legitimate purpose connected with travel and the defect need not be on the actual traveled portion of the highway"), aff'd, 304 Conn. 298, 39 A.3d 1065 (2012). Our Supreme Court has construed the word road or highway, as used in § 13a-149, to include the shoulders of the roadway as well as sidewalks. *Bellman* v. *West Hartford*, supra, 395 ("[t]he term sidewalk is meant to apply to those areas that the public uses for travel" [internal quotation marks omitted]); *Himmelstein* v. *Windsor*, supra, 304 Conn. 309 (term highway also extends to "[t]he shoulders of a highway, [which] while not designed for ordinary . . . traffic, are intended for use when need arises" [internal quotation marks omitted]).

Sidewalks can be considered defective for the purposes of § 13a-149 by reason of snow and ice. See, e.g., *Mausch* v. *Hartford*, 184 Conn. 467, 469–70, 440 A.2d 157 (1981); *Monteiro* v. *East Hartford*, Superior Court, judicial district of Hartford, Docket No. CV-94-0534950-S (January 12, 1995) (13 Conn. L. Rptr. 285, 287) (accumulation of snow and ice on sidewalk amounted to highway defect).

"[T]he manner in which a defect is created in and of itself has no bearing on . . . liability under the statute.

Rather, it is the existence of the defect and the . . . actual or constructive knowledge of and failure to remedy that defect that are of primary importance in making out a prima facie case of . . . liability . . . . Indeed, this court previously has concluded on several occasions that a municipality may be liable under the applicable highway defect statute despite the fact that the defect was created by the negligence of a third party . . . . Because there exists a statutory duty to maintain highways such that they are safe for ordinary use, liability under the highway defect statutes is premised on the existence of and the failure to remedy a defect, rather than on negligence in creating or allowing a nuisance or other obstruction to present a danger to travelers." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Himmelstein* v. *Windsor*, supra, 304 Conn. 314–15.

The plaintiffs argue that the court erred in concluding that their claim against the city was a public highway defect claim which must be brought, if at all, as an action under § 13a-149, because (1) their claim is not about the "condition of the highway due to the negligence or neglect of the [city], but, rather the intentional affirmative acts of the [city] which contribute[d] to the condition of the sidewalk abutting 100 Taylor Avenue . . . and created a public nuisance" and (2) § 95-10 of the Norwalk City Code operates such that the city is not the party bound to keep the roadway in repair; therefore, their cause of action is in nuisance, not under § 13a-149.[10] We disagree.

The plaintiffs' first contention is that a public nuisance claim may be brought independently of § 13a-149. Our resolution of this claim is governed by the language of § 52-557n (a) (1). Section 52-557n (a) (1) (C) provides that a municipality does not enjoy immunity from a claim of nuisance, but immediately modifies the provision by stating that "no cause of action shall be maintained for damages [arising from a defective road] *except pursuant to section 13a-149.*" (Emphasis added.) See also *Himmelstein* v. *Windsor*, supra, 304 Conn. 308. Therefore, under § 52-557n (a) (1), we first must determine whether the plaintiffs' claim is a claim for damages against a municipality "resulting from injury to any person or property by means of a defective road . . . ." General Statutes § 52-557n (a) (1) (C). If the answer is yes, then the party seeking relief is bound to pursue such relief pursuant to § 13a-149.

It is clear from the facts alleged in count four of the plaintiffs' fourth amended complaint that the plaintiffs' claim is one for damages against a municipality resulting from an injury to a person by means of a defective road. First, count four is a claim for damages against a municipality—that is, the city. Second, count four is a claim for damages resulting from bodily injuries allegedly sustained by Teanna Escourse. Third, count

four is a claim for damages resulting from bodily injuries allegedly sustained by Teanna Escourse by means of a defective road. There is no question that the alleged bodily injuries occurred on a municipal road—that is, the sidewalk, shoulder, or roadway of Taylor Avenue. Similarly, there is no question that the allegation is that the road was defective—our courts have held that the presence of snow and ice is a defect. See *Mausch* v. *Hartford*, supra, 184 Conn. 469–70. Furthermore, in count four, the plaintiffs alleged that Teanna Escourse's injuries were due to the city's conduct surrounding snow removal on the municipal road, which "interfered with the right of the public including the plaintiff to use the sidewalk abutting 100 Taylor Avenue." We therefore conclude that § 52-557n (a) (1) requires the plaintiffs to seek relief, if at all, pursuant § 13a-149 for their claim against the city in count four of their fourth amended complaint.

The plaintiffs' second contention is that the city was not the party bound to maintain the sidewalk, and, thus, an action arising from a defect on that sidewalk does not fall within the ambit of § 13a-149. The argument is that General Statutes § 7-163a allows municipalities to shift liability arising from the failure to remove ice and snow from sidewalks to abutting landowners, and the city has done so in this case by enacting § 95-10 of the Norwalk City Code.[11] If liability and the responsibility to remove ice and snow had been shifted, the argument goes, then the city was not the party charged with maintenance. It thus would not be an entity to which § 13a-149 by its terms applies; see General Statutes § 13a-149 ("[a] person . . . may recover damages from the party bound to keep [the defective road] in repair"); and an action in public nuisance could then be brought independently of § 13a-149.

The argument encounters two insurmountable obstacles. First, as noted previously, § 52-557n (a) categorically establishes that no claim alleging personal or property damage by means of a defective sidewalk may be brought against a municipality except pursuant to § 13a-149. By itself, the statutory mandate is dispositive.

Second, liability for nuisance created by a municipality does not appear to have been shifted to the abutting landowner in any event. Section 7-163a, which allows municipalities to shift liability and responsibility for removing snow and ice to abutting landowners, specifically provides that regardless of generally shifting liability, the "municipality shall be liable for its affirmative acts with respect to such sidewalk." The city, then, was not authorized to shift liability as to nuisance.[12]

We therefore conclude that the trial court properly determined, as a matter of law, that the specific allegations set forth in count four of the plaintiffs' fourth amended complaint sounding in nuisance fall within the province of § 13a-149. Because § 13a-149 was the

exclusive remedy available to the plaintiffs, count four was legally insufficient, and the court correctly granted the city's motion to strike.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] 100 Taylor Avenue, LLC, Christopher Condors, and Gennaro Cappuccia were also defendants in this action, but are not involved in this appeal.

[2] The first, second, and third counts asserted claims of negligence against private property owners. The first count asserted a cause of action against the defendant 100 Taylor Avenue, LLC, the owner of the property abutting the southbound lane of traffic on Taylor Avenue, for, inter alia, failing "to make the public sidewalk abutting the premises safe and convenient for pedestrians by removing the snow that had accumulated on the sidewalk as required by, and in violation of, § 95-10 of the Norwalk City Code . . . ."

The second count asserted a cause of action in negligence against the defendant Gennaro Cappuccia, the owner of an apartment building with a parking lot located directly across the street from 100 Taylor Avenue, for, inter alia, "plow[ing] the snow that had accumulated on his property across the street into the southbound lane of traffic on Taylor Avenue, the southbound shoulder of the roadway, and onto the sidewalk abutting 100 Taylor Avenue, thereby rendering the sidewalk impassible to pedestrians . . . ."

The third count asserted a cause of action in negligence against the defendant Christopher Condors, the owner of a commercial building located at 97 Taylor Avenue with "a parking lot located across the street from 98 Taylor Avenue, and diagonally across the street from 100 Taylor Avenue" for, inter alia, "plow[ing] the snow that had accumulated on his property across the street into the southbound lane of traffic on Taylor Avenue, the southbound shoulder of the roadway, and onto the sidewalk abutting 100 Taylor Avenue, thereby rendering the sidewalk impassible to pedestrians" and removing "the snow that had accumulated on his property in such a manner as to obstruct, impede, and endanger the public use of the sidewalk abutting 100 Taylor Avenue . . . ."

The fifth count, brought by Teanna Escourse's parents, asserted a claim against all of the defendants for medical expenses.

[3] The plaintiffs attached a copy of a "Notice of Claim pursuant to [General Statutes] §§ 7-465 and 13a-149" to their second amended complaint, filed August 15, 2011.

[4] We note that the city also moved to strike the parents' derivative claim for medical expenses.

[5] The court also rendered judgment in favor of the city on the parents' derivative claim.

[6] "A motion to strike . . . admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." (Emphasis omitted; internal quotation marks omitted.) *Mora* v. *Aetna Life & Casualty Ins. Co.*, 13 Conn. App. 208, 211, 535 A.2d 390 (1988). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." *Gordon* v. *Bridgeport Housing Authority*, 208 Conn. 161, 170, 544 A.2d 1185 (1988); see also *Alarm Applications Co.* v. *Simsbury Volunteer Fire Co.*, 179 Conn. 541, 549–50, 427 A.2d 822 (1980) (motion to strike "is to be tested by the allegations of the pleading demurred to, which cannot be enlarged by the assumption of any fact not therein alleged" [internal quotation marks omitted]).

[7] General Statutes § 52-557n (a) (1) provides in relevant part: "Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by . . . (C) acts of the political subdivision which constitute the creation or participation in the creation of a nuisance; provided, no cause of action shall be maintained for damages resulting from injury to any person or property by means of a defective road or bridge except pursuant to section 13a-149."

[8] General Statutes § 13a-149 provides: "Any person injured in person or property by means of a defective road or bridge may recover damages from the party bound to keep it in repair. No action for any such injury sustained on or after October 1, 1982, shall be brought except within two years from the date of such injury. No action for any such injury shall be maintained against any town, city, corporation or borough, unless written notice of such injury and a general description of the same, and of the cause thereof and of the time and place of its occurrence, shall, within ninety days thereafter be given to a selectman or the clerk of such town, or to the clerk of

such city or borough, or to the secretary or treasurer of such corporation. If the injury has been caused by a structure legally placed on such road by a railroad company, it, and not the party bound to keep the road in repair, shall be liable therefor. No notice given under the provisions of this section shall be held invalid or insufficient by reason of an inaccuracy in describing the injury or in stating the time, place or cause of its occurrence, if it appears that there was no intention to mislead or that such town, city, corporation or borough was not in fact misled thereby."

To recover under § 13a-149, a plaintiff "must prove, by a fair preponderance of the evidence, (1) that the highway was defective as claimed; (2) that the defendant actually knew of the particular defect or that, in the exercise of its supervision of highways in the city, it should have known of that defect; (3) that the defendant, having actual or constructive knowledge of this defect, failed to remedy it having had a reasonable time, under all the circumstances, to do so; and (4) that the defect must have been the sole proximate cause of the injuries and damages claimed, which means that the plaintiff must prove freedom from contributory negligence." (Internal quotation marks omitted.) *Nicefaro* v. *New Haven*, 116 Conn. App. 610, 613, 976 A.2d 75, cert. denied, 293 Conn. 937, 981 A.2d 1079 (2009).

[9] A highway defect is distinguishable from "those objects which have no necessary [connection] with the road bed, or the public travel thereon, and which may expose a person to danger, not as a traveler but independent of the highway . . . . [I]f there is a defective condition that is not in the roadway, it must be so direct a menace to travel over the way and so susceptible to protection and remedial measures which could be reasonably applied within the way that the failure to employ such measures would be regarded as a lack of reasonable repair." (Citation omitted; internal quotation marks omitted.) *Sanzonne* v. *Board of Police Commissioners*, 219 Conn. 179, 202, 592 A.2d 912 (1991).

[10] "The statutory provisions of § 13a-149 have two components that must be met in order to trigger its application: (1) the plaintiff must have sustained an injury by means of a defective road or bridge and (2) the party whom the plaintiff is suing must be the party bound to keep [the location where the injury was sustained] in repair." (Internal quotation marks omitted.) *Novicki* v. *New Haven*, 47 Conn. App. 734, 739–40, 709 A.2d 2 (1998). "Ownership of the property does not establish liability under § 13a-149 . . . . Rather, it is the governmental entity charged with the duty . . . to keep [the property] in repair . . . or the party bound to keep [the property] in repair . . . on which the [statute] impose[s] liability under certain circumstances." (Citations omitted; internal quotation marks omitted.) Id., 742.

The plaintiffs stress the second component, arguing that in this case, the city was not the party bound to keep the location where the injury occurred in repair because § 95-10 of the Norwalk City Code shifted the duty, and liability, of keeping the sidewalk clear of snow and ice to the abutting property owner.

[11] Section 95-10 of the Norwalk City Code provides: "A. The provisions of Section 7-163a of the Connecticut General Statutes are hereby adopted and are set forth in Subsections B, C, D and E hereof.

"B. Notwithstanding the provisions of Section 13a-149 of the Connecticut General Statutes or any other general or special act, the City shall not be liable to any person for injury to person or property due to the presence of ice or snow on a public sidewalk unless the City is the owner or person in possession and control of land abutting such sidewalk, other than land used as a highway or street, provided that the City shall be liable for its affirmative acts with respect to any such sidewalk under its possession and control.

"C. The owner or person in possession and control of land abutting a public sidewalk shall have the same duty of care with respect to the presence of ice or snow on such sidewalk toward the portion of the sidewalk abutting his property as the City had prior to the effective date of this chapter and shall be liable to persons injured in person or property where a breach of said duty is the proximate cause of said injury.

"D. No action to recover damages for injury to person or property caused by the presence of ice or snow on a public sidewalk against a person who owns or is in possession and control of land abutting a public sidewalk shall be brought but within two years from the date when the injury is first sustained.

"E. Whenever the public sidewalk shall be wholly or partially covered by snow or ice, it shall be the duty of the owner or person in possession and control of land abutting a public sidewalk to cause such sidewalk to be

made safe and convenient by removing the snow therefrom within the first six hours of daylight immediately following the accumulation of such snow thereon or, in the case of ice, by covering the same with sand or other suitable material within the first six hours of daylight following the accumulation of such ice, and then renewing such treatment as often as may be necessary to keep such sidewalk safe and convenient. In case of the failure or neglect of the owner or person in possession and control of land abutting the public sidewalk to comply with this subsection, the Director may cause the same to be done, and the expense thereof shall be collectible from the person so failing or neglecting, in an action of debt brought in the name of the City under this section. Any person who fails or neglects to comply with this subsection shall also be liable for a penalty or fine in an amount established in accordance with § 90-4, Approval of rates and fees."

[12] Although it might be argued that an obligation not to cause a defect by affirmative act is different from the ordinary obligation to keep a sidewalk reasonably free from ice and snow, the effect is the same with respect to the application of § 13a-149: either way, a defect has been created.

―――――――――――――――――――――